# CASES IN CHANCERY.

## BERRY *v.* CROSS and others.

A voluntary joint stock association was formed for owning and conducting ferries. By the articles, seven trustees were to be elected, who were to be vested with the property, hold it for the stockholders, and be liable for the debts; and every vacancy among the trustees, by death, resignation, or otherwise, was to be filled at the annual meeting. B. was elected one of the trustees and acted. A., another trustee, resigned, whereupon an election of trustees was ordered and notice given, and an election held, at which seven were chosen, displacing B. B. acted as a trustee in appointing inspectors of election, and at the election voted for seven, including all the old trustees except A. On B.'s being excluded from the further management of the association, he filed a bill for an account and dissolution.

*Held*, that his acts respecting the election, did not effect a resignation of his office, and that there was no vacancy to be filled except that made by A., and that B. was still a trustee.

May 6; August 4, 1845.

THE bill in this cause was filed on the 25th of November, 1843, for the dissolution of a partnership-existing between the complainant, Berry, and the defendants, in certain ferries between the city of New York and the village of Williamsburgh,—and for an account of the joint concerns.

The bill stated that on the 15th of May, 1841, the parties formed themselves into a voluntary association under the name of The Williamsburgh and New York Union Ferry Association, by articles of agreement which were signed by the associates, and which were set forth at large in the bill. These articles provided for a capital stock of fifty thousand dollars, divided into five hundred equal shares. The object was declared to be the establishment and maintenance of ferries between New

York and Williamsburgh, landing at designated points. The property of the association was to be vested in seven trustees, who were to be elected by the stockholders from among their number. The agreement then contained this clause; " And every vacancy among said trustees by death, resignation or otherwise, shall be filled at the annual meeting hereinafter provided for." It further provided that the trustees, or their survivors or successors, should hold the real and personal property of the association for the benefit of the stockholders, &c. By the fifth article there was to be a stated meeting of the stockholders once in every year, on the first Monday of ————, (which blank was never filled.) The agreement recited that the trustees had the custody and possession of the estate of the association, to indemnify them for all their engagements; and it therefore declared that the stockholders were not to be liable for any contracts made by the trustees.

The bill further stated, that at the first election, regularly held on the third day of July, 1841, the complainant, the defendant, John A. Cross, with Abraham Boerum, and four others, were elected trustees of the association. That the trustees soon thereafter obtained the requisite lease of the ferries from the corporation of the city of New York, and on the first day of May, 1842, entered into the full possession and control of the ferries, and contracted a large amount of debts, for which the complainant became personally liable, a great part of which remained outstanding. That the complainant has never resigned his office as trustee. That at a regular meeting of the trustees held June 28th, 1843, it was resolved that an election of trustees of the association be held on the 19th day of July ensuing; but on the first day of July at a special meeting, that resolution was rescinded, and it was then resolved that the election be held on the first Monday of August. At a special meeting on the 20th of July, notices of the election were directed to be published. On the second of August there was a special meeting of the trustees, when inspectors of the election were appointed, and another on the fifth, when the place of one of those inspectors was filled. The complainant had been informed the election was to be held

to fill a vacancy occasioned by the resignation of Abraham Boerum, and was present at the two meetings last mentioned. On the first Monday of August, 1843, an election was held, seven trustees were voted in, and a certificate of their election was filed, —by which it appeared that all the original trustees were elected except the complainant and Boerum. The complainant attended at the election, and voted for a new trustee in place of Boerum, and for the six other original trustees, supposing that those six continued as a matter of course, and that he acted throughout only to fill Boerum's vacancy.

The bill further stated that the trustees held a meeting on the 26th of August, 1843, at which the complainant appeared and claimed to act as trustee, but was prevented by the others. He demanded his seat as trustee, but it was refused to him by Mr. Cross, the president. He has ever since been prevented from taking any part in the management of the ferries and property. The bill denies the right of the stockholders to oust him in the manner stated; but the complainant has offered to resign and transfer the title to the property on being indemnified against the debts and liabilities which he had incurred as trustee.

The answer of the defendants who were and claimed to be trustees, admitted most of the statements in the bill. It was silent as to the fact of any resignation by the complainant, but stated that he was present and participated in the resolutions to go into a general election of trustees, and was present at the election and voted for an entire board. The answer insisted that these acts were a resignation of his office of trustee, and conclude the complainant on that point.

It appeared by the testimony, that Boerum resigned as stated in the bill, or had entirely refused to act further as a trustee; that the complainant was not present at either of the meetings which directed the election and the publication of the notice of the same; that he was present at the meetings on the 2d and 5th of August, and at the election; and that when he filed his bill, the debts of the association were $3385, besides the covenants into which the trustees had entered in the ferry leases.

The cause was heard on the pleading and proofs.

The parties agreed upon the form of the decree to be entered, if the court were with the complainant.

*J. Dikeman*, for the complainant.

*W. W. Campbell*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—There is no provision in these articles for stated elections of trustees; but every vacancy among the trustees by *death, resignation, or otherwise,* was to be filled at the *annual meeting* of the stockholders. The fifth article declared that there should be a stated meeting of the stockholders once in every year, on the first Monday of —————. This blank was never supplied or filled; and no such stated meeting appears to have been held. The seven trustees were elected in July, 1841, and the election in question was in August, 1843.

The first inquiry is whether Jacob Berry's place as trustee was vacant at the time of the latter election. He never *resigned.* This is alleged in the bill, and is admitted by the silence of the answer in regard to it. If he had resigned, the fact must have come to the personal knowledge of some one of the trustees who are defendants. (*Rule 17th.*)

Instead of his having resigned, he was present acting as a trustee, and his right thus to act conceded, on the second of August, 1843, which was after the election had been ordered and the notice published; and again on the fifth of August, which was the last meeting held before the election, and was only two days before it took place. So far as the complainant participated in the proceedings prior to the day of the election, his conduct is clearly referrible to the vacancy occasioned by the resignation of A. Boerum, one of the trustees. There was thus, no vacancy up to the day of the election.

It is insisted that the complainant's voting for seven trustees on that day, was in effect a *vacatur* of his office, if not a distinct resignation. I think the former proposition depends upon the latter. There was no vacancy unless it were made by the voluntary act of the complainant; which act, whatever it may

Berry v. Cross.

have been in form, would be a resignation. Then was his vote, a resignation of his office? He voted for himself and all the trustees who were in office, excepting Boerum. His object is to be derived from this act alone. He said nothing which indicated a design to vacate or give up his post. This act surely indicated a directly contrary intention. It showed that he did not wish or intend to leave his place as a trustee. And I cannot perceive how there can be a resignation derived from conduct which evinces a determination not to leave the office, and where there is no proof of any intent to resign or vacate.

It will not do to say that his vote for seven trustees, shows that he considered the whole number vacant. There is no evidence of what his view was; but it is plain he could not have deemed the whole vacant. There had been but one resignation, and no other was known to be in contemplation. He could not have known that the five other trustees would vote for any more than one person to fill the existing vacancy; and there is no proof that they did vote for more than one person. The notice of the election did not specify the number of trustees which was to be chosen. In fine, the complainant's explanation in his bill, is as probable as any that has been suggested; and far more probable than the idea that he intended to resign his office, or what is equivalent, leave it to the stockholders to say whether or not he should continue.

The whole thing appears to be a misconception. If the act of voting at the election produced the vacancy, how could the stockholders there present, know of such vacancy so as to vote for supplying it? The vote was by ballot, and until the poll was closed, and the votes counted, it could not regularly be known that Mr. Berry, or any other of the six trustees, had voted for seven trustees, or had so voted as to vacate their offices; and thus none of the stockholders would know till it were too late, whether there was one vacancy or seven in the board of trustees.

This view of the case relieves me from considering the regularity of the election in point of time. It is said that it was not at the stated annual meeting, and was not advertised as such.

On the other ground, I am satisfied that the complainant is still a trustee and was warranted in filing his bill.

The arrangement made between the parties, will dispense with any farther provision than this, that the defendants pay the costs of the suit.